IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF PUERTO RICO

| UNIDAD LABORAL DE ENFERMERAS(OS) Y EMPLEADOS DE LA SALUD, | |
|---|---|
| **Plaintiff**, | |
| v. | **Civil No.** 17-2117 (FAB) |
| METRO MAYAGÜEZ, INC. d/b/a HOSPITAL PEREA, | |
| **Defendant**. | |

                          **OPINION AND ORDER**[1]

BESOSA, District Judge.

Before the Court is plaintiff Unidad Laboral de Enfermeras(os) y Empleados de la Salud ("ULEES")'s petition to revoke an arbitration award pursuant to Puerto Rico Law 100 ("Law 100"). (Docket No. 6.) Defendant Metro Mayagüez, Inc. d/b/a Hospital Perea ("hospital") opposed ULEES's petition. (Docket No. 8.)[2] For the reasons set forth below, the Court **DENIES** ULEES's petition to revoke the arbitration award. Accordingly, the Court **AFFIRMS** the arbitration award.

---

[1] Jeremy S. Rosner, a third-year student at Emory University School of Law, assisted in the preparation of this Opinion and Order.

[2] ULEES originally filed its petition in the Puerto Rico Court of First Instance. See Docket No. 6. The hospital removed the case to federal court. (Docket No. 1.)

## I. Background

### A. Factual History

The Court derives the following undisputed facts from the arbitration award. See JCI Commc'ns., Inc. v. IBEW, Local 103, 324 F.3d 42, 45 (1st Cir. 2003) ("The district court properly confined itself to a review of the panel's award and to the record before the arbitrator.").

ULEES is a labor union representing the hospital's employees. See Docket No. 6, Ex. 1. A collective bargaining agreement ("CBA") governs the labor relations between ULEES and the hospital. (Docket No. 6, Ex. 1 at p. 20.)[3] The CBA provides that, in relevant part:

> The employees . . . agree to not . . . discuss labor-relations matters in front of or near patients, and to not conduct actions or activities in work areas which in any manner affect the work or the services that are offered at the [hospital].
>
> The parties recognize the right of the [h]ospital . . . to suspend and/or dismiss its employees for just cause; the right to establish work . . . discipline[.]
>
> [An employee can be subject to discipline if he or she] [a]bandon[s] [his or her] work without the authorization of a Supervisor or representative in the absence of the same at the Human Resources Office.

(Docket No. 6, Ex. 2 at p. 66; Docket No. 6, Ex. 3 at p. 9.)

---

[3] The CBA governing this dispute was effective from July 19, 2013 until June 1, 2017. (Docket No. 6, Ex. 3 at p. 13.)

Civil No. 17-2117 (FAB)                                              3

Eduardo Cruz ("Cruz") works for the hospital as an operating room technician. (Docket No. 6, Ex. 1 at p. 2.) Cruz is a member of ULEES. Id. Cruz's professional responsibilities entail preparing the operating room for doctors in anticipation of surgical procedures. Id. at p. 16.

On August 17, 2015, Cruz left his work area for a period of twenty-four (24) minutes without notifying a supervisor or Human Resources. (Docket No. 6, Ex. 1 at p. 16.) Cruz was the only technician assigned to the operations room at this time. Id. During the twenty-four (24) minute period, Cruz went to the surgical medical area to discuss union matters with Luis Rodríguez, a nurse working at the hospital. Id. Cruz's actions incited a formal investigation by Human Resources as to whether Cruz's behavior warranted discipline. Id. at p. 17.

On August 10, 2013, the hospital found that Cruz had violated Fault Forty-Four of the Disciplinary Regulation ("Fault Forty-Four") regarding the abandonment of employment. (Docket No. 6, Ex. 1 at p. 18.)[4] As a result, Cruz was suspended without pay for five workdays. Id. at p. 17.[5] ULEES challenged the

---

[4] An employee violates Fault Forty-Four if they "[a]bandon [their] work without the authorization of a Supervisor or representative in the absence of the same at the Human Resources Office." (Docket No. 6, Ex. 1 at p. 15.) The first violation of Fault Forty-Four can result in an employee's dismissal. (Docket No. 6, Ex. 3 at p. 9.)

[5] The five days of Cruz's suspension ran from August 30, 2017 to September 5, 2017. (Docket No. 6, Ex. 1 at p. 17.)

hospital's decision on Cruz's behalf and submitted the case to arbitration.  (Docket No. 6, Ex. 1 at p. 18.)[6]

**B.    Arbitration Award**

On March 11, 2015, ULEES and the hospital attended an arbitration hearing at the Conciliation and Arbitration Bureau of the Puerto Rico Department of Labor and Human Resources to determine whether the hospital's suspension of Cruz was justified. (Docket No. 6, Ex. 1 at pp. 11 and 13.)  The arbitrator concluded that "the suspension imposed on Mr. Eduardo Cruz Rodríguez was justified" because Cruz's actions affected the activities or services of the hospital in violation of Article XXXVI of the CBA ("Article XXXVI").  (Docket No. 6, Ex. 1 at pp. 22-24.)[7]  Pursuant to Article XXXVI, an employee may "not process or discuss labor matters in front of, or near patients, and [may] not conduct actions or activities in work areas which in any manner affect the

---

[6] Article XVII of the CBA ("Article XVII") sets forth the "Complaints And Grievance Procedure," which outlines the administrative steps necessary to resolve conflicts between employers and employees subject to the CBA. (Docket No. 6, Ex. 2 at p. 29.)  When a conflict arises, an employee must present his or her complaint of dissatisfaction to an immediate supervisor. Id.  If the conflict remains unresolved, the employee must present the complaint to Human Resources.  Id.  Finally, if the conflict persists, ULEES or the hospital can submit the case to arbitration.  Id.  Here, the hospital does not challenge Cruz's proper exhaustion of administrative remedies.  See Docket No. 6, Ex. 1 at pp. 13 and 18.  Accordingly, the hospital waives these arguments.  Cf. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

[7] The arbitrator relied on Puerto Rico law to determine the standard of care for health care professionals and the legal standard for employee abandonment. See Docket No. 6, Ex. 1 at pp. 21 and 24.

work or the services that are provided at the [hospital]." (Docket No. 6, Ex. 1 at p. 23.)

The arbitrator found that "when [Cruz] left his work area alone, without the proper authorization, he placed the health of the patients at risk, because in the aforementioned department emergency operations are performed, which have to be attended immediately." (Docket No. 6, Ex. 1 at p. 22.) According to the arbitrator, "the services of the [h]ospital were [also] affected when [Cruz] interrupted the work of a nurse, who was attending patients, to discuss union matters." Id. at p. 23. Because Cruz affected the services and activities of the hospital through his actions, the arbitrator determined that Cruz violated the CBA and that sanctions were warranted. On June 27, 2017, the arbitrator determined that the hospital's five-day suspension of Cruz's employment was justified. Id. at p. 24.

**C. Procedural History**

On July 29, 2017, ULEES petitioned the Puerto Rico Court of First Instance to revoke the arbitration award. (Docket No. 8 at p. 5.) One month later, the hospital timely filed a notice of removal from the Puerto Rico Court of First Instance to this Court.

Civil No. 17-2117 (FAB)                                         6

Id. at p. 6.[8]  On November 20, 2017, the hospital opposed ULEES's petition.  (Docket No. 8 at p. 14.)

   **D.  Jurisdiction**

The Court has jurisdiction over this civil action pursuant to section 301 of the Labor Management Relations Act ("LMRA").  See 29 U.S.C. § 185; see also Docket No. 1 at p. 3.[9]  The interpretation of labor contracts, such as the CBA, "under the [Labor-Management Relations Act ("LMRA")] is a matter of federal common law."  Senior v. NSTAR Elec. & Gas Corp., 449 F.3d 206, 216 (1st Cir. 2006).

**II.  Standard of Review**

"It is a firm principle of federal labor law that where parties agree to submit a dispute to binding arbitration, absent unusual circumstances, they are bound by the outcome of said proceedings."  Posadas de Puerto Rico Assocs., Inc. v. Asociación de Empleados de Casino de Puerto Rico, 821 F.2d 60, 61 (1st Cir. 1987).  "[I]t is the arbitrator's view of the facts and the meaning of the contract that they have agreed to accept," and for this reason, "[a] court's review of an arbitrator's decision is highly

---

[8] In support of its notice of removal, the hospital cited 28 U.S.C. §§ 1331, 3337, 1441, and 1446, and 29 U.S.C. § 185.  (Docket No. 1 at p. 3.)

[9] Concurrent jurisdiction exists in federal and local courts for cases regarding CBA violations or inadequate union representation.  See Junta de Relaciones del Trabajo de P.R. v. Unión de Tronquistas de P.R., Local 901, 117 D.P.R. 790, 794 (P.R. 1986).

deferential." Hawayek v. A.T. Cross Co., 221 F. Supp. 2d 254, 256 (D.P.R. 2002) (Casellas, J.).

"Judicial review of an arbitration award is among the narrowest known in the law." Me. Cent. R.R. Co. v. Bd. of Maint. of Way Emps., 873 F.2d 425, 428 (1st Cir. 1989). A court cannot revoke an arbitration award "even if [it is] convinced that the arbitrator committed a serious error of fact or law." Unión de Tronquistas de P.R., Local 901 v. UPS, 960 F. Supp. 2d 354, 361 (D.P.R. 2013) (Delgado-Colón, J.); see Cytyc Corp. v. DEKA Prods. Ltd. P'ship, 439 F.3d 27, 32 (1st Cir. 2006).

"An arbitrator's decision, however, is not entitled to *carte blanche* approval." See Int'l Shipping Agency, Inc. v. Malave-Trinidad, 2011 U.S. Dist. LEXIS 75041, at *4 (D.P.R. 2011) (Vélez-Rivé, Mag. J.). "The arbitrator must [] determine the truth respecting material matters in controversy, as he [or she] believes it to be, based upon a full and fair consideration of the entire evidence and after he [or she] has accorded each witness and each piece of documentary evidence, the weight, if any, to which he [or she] honestly believes it to be entitled." Hoteles Condado Beach, La Concha & Convention Center v. Unión de Tronquistas Local 901, 763 F.2d 34, 39 (1st Cir. 1985). In disputes between employers and labor unions, an arbitration award is only legitimate if "it draws its essence from the collective bargaining agreement."

United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960). The arbitrator cannot ignore the CBA's plain language. See United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987).

A court may revoke an arbitration award when the party challenging the award establishes that the award was "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made this kind of ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." Prudential-Bache Sec. v. Tanner, 72 F.3d 234, 238 (1st Cir. 1995); see Int'l Shipping Agency, Inc. v. Unión de Empleados de Muelles, 21 F. Supp. 2d 100, 104 (D.P.R. 1998) (Casellas, J.). "To succeed under this standard, 'there must be some be some showing in the record, other than the result obtained, that the arbitrator knew the law and expressly disregarded it.'" McCarthy v. Citigroup Global Mkts., Inc., 463 F.3d 87, 91 (1st Cir. 2006).

A court "cannot vacate the award because the arbitrator misreads the contract, where there is room to do so, nor [is a court] authorized to reject [the arbitrator's] honest judgment as to the appropriate remedy, if the contract gives [the arbitrator] authority to decide that question." Hawayek, 221 F. Supp. 2d at 256. "As long as the arbitrator is even arguably construing or

Civil No. 17-2117 (FAB)                                            9

applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Id.; cf. Dialysis Access Ctr., PLLC v. RMS Lifeline, Inc., 2017 U.S. Dist. LEXIS 136070, at *3 (D.P.R. 2017) (Vélez-Rivé, Mag. J.) ("If a reviewing court had the final say on the merits of an arbitrator's award, the federal policy of settling labor disputes by arbitration would be undermined.").

**III. Applicable Law**

    **A.    Arbitrability**

Before reviewing the validity of an arbitration award, the Court must determine "the arbitrability of the dispute." Mobil Oil Corp. v. Oil, Chemical & Atomic Workers Int'l Union, 600 F.2d 322, 325 (1st Cir. 1979). "While the court may refer to an arbitrator's discussion on arbitrability in order to aid its determination . . . it must make its own independent determination of this threshold issue." Id.[10]

---

[10] The CBA provides a similar arbitrability requirement in Article XVII. (Docket No. 6, Ex. 2 at p. 32.) "[In] [t]he case where any of the parties alleges that the complaint is not substantively or procedurally arbitrable, the arbitrator will first determine the controversy with regard to the arbitrability." Id. Here, neither the parties nor the arbitrator disputes the arbitrability of the case. See Docket No. 6, Ex. 1 at pp. 18-20. Because the CBA designates arbitration as the means to resolve labor-related matters in this context, the Court determines that ULEES's case satisfies the threshold arbitrability requirement. See Docket No. 6, Ex. 1 at pp. 13, 16-18.

**B.    Interpreting a Collective Bargaining Agreement**

Pursuant to "federal law governing the interpretation of a labor contract under the LMRA, a court should resort to traditional principles of contract interpretation to the extent [that such] principles are consistent with federal labor law." Id.; see Northern New Eng. Tel. Operations LLC v. Local 2327, IBEW, 735 F.3d 15, 21 n.3 (1st Cir. 2013) ("[A]n interpretation [of a CBA] in fact disregarded express contract terms, or created additional terms from thin air, would [not] be found 'plausible.'").

An arbitrator may consider relevant law and industry standards when making his or her decision. See United Steelworkers, 363 U.S. at 581-82 ("The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it."). "An arbitral award may sometimes incorporate state law *not inconsistent* with established principles of federal labor law." Unión Independiente de Trabajadores de la

Cervercería v. Cervecería India, Inc., 994 F. Supp. 2d 205, 212 (D.P.R. 2014) (Casellas, J.) (emphasis added).[11]

The CBA sets forth the bases upon which an arbitrator may rely in rendering his or her decision. See Docket No. 6, Ex. 2 at pp. 30-31. Article XVII section 2(h) states, "Any award issued by the arbitrator will be . . . issued pursuant to law, the Collective Bargaining Agreement and the applicable laws." Id. at p. 30. Article XVII section 2(d) continues, "The award of the arbitrator will be final and binding, and will obligate the parties provided the same is pursuant to law and does not vary or alter the provisions of this Agreement." Id. The "determination of the arbitrator [thus] must be pursuant to law." Id. at p. 31.

"That an award be issued pursuant to law implies that the arbitrator is obligated to follow the rules of law and render his decision pursuant to the prevailing legal doctrines." (Docket No. 6, Ex. 2 at p. 30.) "[T]he phrase 'according to law' merely means that the arbitrator's decision on the merits . . . must conform to federal and state substantive law." Cerveceria India, Inc., 994 F. Supp. 2d at 212. "[T]he inclusion of the phrase

---

[11] Puerto Rico law dictates that when interpreting a contract, words with different meanings "shall be understood in that which may be most in accordance with the nature and object of the contract." P.R. Laws Ann. tit. 31, § 3476. "If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." Id. at § 3471.

'according to law' in an arbitration clause conditions the arbitrator's decision to a correct application of legal principles and, therefore, enables a court to review the legal criteria used by an arbitrator." Trailer Marine Transport, Inc. v. Unión de Tronquistas de Puerto Rico, 553 F. Supp. 823, 825-26 (D.P.R. 1982) (Cerezo, J.). Nevertheless, "[t]hat a reviewing court is convinced that the arbitrators committed error—even serious error—does not justify setting aside the arbitral decision." Cytyc Corp., 439 F.3d at 32.

## IV. Discussion

ULEES argues that the arbitration "[a]ward is contrary to law and the Collective Bargaining Agreement." (Docket No. 6, Ex. 1 at p. 2.) ULEES submits that the arbitrator "erred in sustaining a suspension for abandonment of work when the arbitrator himself indicate[d] that the action of the complainant does not constitute an abandonment of work." Id. at p. 5. ULEES claims that the hospital "did not establish before the arbitrator, nor did it prove that [Cruz] had abandoned his job." Id. at p. 8. ULEES concludes that "the facts of abandonment of work were not established wherefore there was no just cause to impose a suspension of five days." Id. at p. 9.

ULEES's contentions are unpersuasive. While an employer does carry the burden of proof to justify disciplinary measures, see

Int'l Shipping Agency, 2011 U.S. Dist. LEXIS 75041, at *20, "[t]he arbitrator is the judge of the admissibility and relevancy of evidence submitted in an arbitration proceeding." Hoteles Condado Beach, 763 F.2d at 39.  The arbitrator considered the CBA, relevant law and the evidence submitted by the parties to determine that the hospital presented "convincing evidence[] that [Cruz] incurred in the fault attributed, in addition to affecting the services that the [h]ospital offers[.]"  (Docket No. 6, Ex. 1 at p. 23.) The arbitrator determined that Cruz's actions were "in contravention" of the CBA "wherefore, [Cruz] should have been, and in effect was disciplined." Id.

Although the arbitrator agreed with ULEES that Cruz did not abandon his work, the arbitrator found that the sanction was justified on other grounds.  See Docket No. 6, Ex. 1 at pp. 23-24.  "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he [or she] is to bring his [or her] informed judgment to bear in order to reach a fair solution of a problem." Challenger Caribbean Corp. v. Unión General de Trabajadores de Puerto Rico, 903 F.2d 857, 869 (1st Cir. 1990).  ULEES's arbitral submission requested that the arbitrator "determine if the suspension of . . . Cruz was justified."  (Docket No. 6, Ex. 1 at p. 13.)  ULEES's broad arbitral submission entitled the arbitrator to examine the CBA,

relevant law, and industry standards to determine whether the suspension was justified for any violation of the CBA that could expose Cruz to discipline. See Challenger Caribbean Corp., 903 F.2d at 869 ("Unless constrained by the collective bargaining agreement, or the arbitral submissions, the arbitrator possessed broad powers to fashion an appropriate remedy."); Telemundo of Puerto Rico v. Unión de Periodistas y Artes Gráficas y Ramas Anexas, 1997 U.S. Dist. LEXIS 4274, at *17 (D.P.R. 1997) (Laffitte, J.) (holding that the arbitral submission and the CBA gave the arbitrator broad powers to determine whether an employee's dismissal was justified).

The arbitrator correctly assessed the merits of ULEES's claims by construing the CBA, Puerto Rico law, and medical industry standards. See Docket No. 6, Ex. 1 at pp. 21 and 24; Docket No. 6, Ex. 2 at pp. 23-25, 29-33, 64-72; Docket No. 6, Ex. 3 at p. 9. The arbitrator relied on Puerto Rico law to define "abandonment of work" and to establish medical industry standards. (Docket No. 6, Ex. 1 at pp. 21 and 24.) The arbitrator found that Cruz violated the CBA by departing from the standard of care when he "left his work area alone, without the proper authorization, [and] placed the health of the patients at risk." See Docket No. 6, Ex. 1 at p. 22. The arbitrator also determined that Cruz violated the CBA "when he interrupted the work of a nurse, who was attending

patients, to discuss union matters." Id. at pp. 22-23. Consequently, the arbitrator upheld the hospital's right "to suspend and/or dismiss its employees for just cause" pursuant to the CBA. Id. at p. 22.

Because the arbitrator "constru[ed]" and "appl[ied]" the CBA "within the scope of his authority," the Court cannot vacate his decision. See Hawayek, 221 F. Supp. 2d at 256. "Where a [CBA] commits the parties to arbitration, the arbitrator's interpretation of the agreement is the one they have bargained for and must abide by." Keebler Co. v. Truck Drivers, Local 170, 247 F.3d 8, 10 (1st Cir. 2001); see Asociación de Empleados del Estado Libre Asociado de P.R. v. Unión Internacional de Trabajadores de la Industria de Automóviles, 2008 U.S. Dist. LEXIS 50373, 2008 WL 2551300, at *11 (D.P.R. 2008) (Gelpí, J.). Accordingly, the Court **DENIES** ULEES's petition to revoke the arbitration award (Docket No. 6) and **AFFIRMS** the arbitration award. See 9 U.S.C. § 16; 9 U.S.C.A. § 9; Santander Sec., LLC v. McDowall, 2017 U.S. Dist. LEXIS 30755, at *2 (D.P.R. 2017) (Cerezo, J.) (holding that the Federal Arbitration Act "supplies mechanisms for enforcing arbitration awards," including "a judicial decree confirming an award").

**IV. Conclusion**

For the reasons set forth above, ULEES's petition for revocation of the arbitration award (Docket No. 6.) is **DENIED**. Accordingly, the arbitration award is **AFFIRMED**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 18, 2018.

s/ Francisco A. Besosa  
FRANCISCO A. BESOSA  
UNITED STATES DISTRICT JUDGE